# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**DARYL BURCHFIELD,**           }
                                }
    **Plaintiff,**             }
                                }
**v.**                          }    **Case No.: 2:11-CV-2816-RDP**
                                }
**INDUSTRIAL CHEMICALS, INC.,** }
                                }
    **Defendant.**             }

## MEMORANDUM OPINION

This matter is before the court on (1) Defendant Industrial Chemicals, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. # 37); (2) Defendant Carlos Maravilla's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. # 49); and Defendant William L. Welch, Jr.'s Motion to Dismiss Second Amended Complaint (Doc. # 54). The Motions have been fully briefed. (Docs. # 38, 43, 50, 52, 53, 55, 58, and 59).

**I.  Background**

Plaintiff Burchfield began his employment with Defendant, Industrial Chemicals, Inc. ("IC") in 2006. (Doc. # 1 at 2).

Plaintiff Burchfield claims his problems with IC began when a Hispanic employee of IC claimed that he was subjected to a barrage of racially discriminatory and derogatory statements by a supervisory employee of IC. Another supervisory employee of IC, Jeffrey Williams, assisted that Hispanic employee with preparing an EEOC charge against IC alleging racial discrimination in employment. Later, IC terminated Williams' employment. Williams filed his own EEOC charge against IC and was reinstated. (Doc. # 32 at 5-6).

In approximately March 2011, Burchfield expressed his support for Williams and complained about being required to sign a document stating that employees could be terminated for contacting government officials. (Doc. # 1 at 3, 7-8). Burchfield's employment was terminated on July 18, 2011, allegedly in retaliation for this protected conduct. (Doc. # 32 at 8).

In connection with the termination of his employment, Plaintiff Burchfield was promised certain severance payments. (Doc. # 1 at 3). On July 25, 2011, Plaintiff Burchfield filed an EEOC charge alleging that his termination was retaliatory. (Doc. # 1 at 7). On July 28, 2011, Plaintiff Burchfield received his first severance payment. (Doc. # 1 at 3-4). Thereafter, Plaintiff Burchfield claims that once IC received notice of his EEOC charge, his severance payments ceased. (Doc. # 1 at 4-5). Plaintiff Burchfield filed his Complaint in this action on August 10, 2011. (Doc. # 1). Since the filing of this lawsuit, Plaintiff Burchfield's severance has been paid in full. (Doc. # 15 at 4).

On July 4, 2012, Plaintiff Burchfield filed a Second Amended Complaint. (Doc. # 32). Plaintiff's Second Amended Complaint added another plaintiff, Cory Jenkins, who is Plaintiff Burchfield's nephew.

After Burchfield's termination, Jenkins alleges that he was threatened with physical violence and that he was told it was because of Burchfield. (Doc. # 32 at 11). After he complained about the threats of violence, Jenkins was terminated. Jenkins claims that the reason given for his termination, reducing the number of managers, was a pretext. (Doc. # 32 AT 11). Jenkins asked to remain in a position he had performed in the past, but his request was denied. Jenkins asserts that IC employed an illegal alien in one such position at the time he was terminated. (Doc. # 32 at 12).

The Second Amended Complaint contains 21 counts:

1. Count I (¶¶ 71-74), Retaliatory Refusal to Pay Severance in Violation of Title VII (Burchfield against Industrial Chemicals);

2. Count II (¶¶ 75-78), Retaliatory Refusal to Pay Severance in Violation of Section 1981 (Burchfield against Industrial Chemicals);

3. Count III (¶¶ 79-82), Retaliatory Discharge in Violation of Title VII (Burchfield against Industrial Chemicals);

4. Count IV (¶¶ 83-86), Retaliatory Discharge in Violation of Section 1981 (Burchfield against Industrial Chemicals);

5. Count V (¶¶ 87-93), Retaliatory Hostile Environment (as to Jenkins) in Violation of Title VII (Burchfield against Industrial Chemicals);

6. Count VI (¶¶ 94-98), Retaliatory Hostile Environment (as to Jenkins) in Violation of Section 1981 (Burchfield against Industrial Chemicals and Welch);

7. Count VII (¶¶ 99-102), Retaliatory Discharge (of Jenkins) in Violation of Title VII (Burchfield against Industrial Chemicals);

8. Count VIII (¶¶ 103-06), Retaliatory Discharge (of Jenkins) in Violation of Section 1981 (Burchfield against Industrial Chemicals and Welch);

9. Count IX (¶¶ 107-12), Retaliatory Hostile Environment (as to Jenkins) in Violation of Title VII (Jenkins against Industrial Chemicals);

10. Count X (¶¶ 113-19), Retaliatory Hostile Environment in Violation of Section 1981 (Jenkins against Industrial Chemicals);

11. Count XI (¶¶ 120-23), Retaliatory Discharge in Violation of Title VII (Jenkins against Industrial Chemicals);

12. Count XII (¶¶ 124-27), Retaliatory Discharge in Violation of Section 1981 (Jenkins against Industrial Chemicals and Welch);

13. Count XIII (¶¶ 128-37), RICO based on 8 U.S.C. § 1324(a)(1)(A)(iii) (Burchfield and Jenkins against Industrial Chemicals, Welch, and Maravilla);

14. Count XIV (¶¶ 138-47), RICO based on 8 U.S.C. § 1324(a)(1)(A)(iv) (Burchfield and Jenkins against Industrial Chemicals and Welch);

3

15. Count XV (¶¶ 148-59), RICO based on 8 U.S.C. § 1324(a)(1)(A)(v)(I)-(II) (Burchfield and Jenkins against Industrial Chemicals, Welch, and Maravilla);

16. Counts XVI, XVII, & XVIII (¶¶ 160-63), Felonious Torts based on RICO Violations (Burchfield and Jenkins against Industrial Chemicals, Welch, and Maravilla); and

17. Counts XIX, XX, & XXI (¶¶ 164-67), Felonious Torts based on 8 U.S.C. § 1324 (Burchfield and Jenkins against Industrial Chemicals, Welch, and Maravilla).

(Docs. # 32 and 38).

## II. Analysis

IC moves to dismiss Counts V through XXI of the Second Amended Complaint. (Docs. # 32 and 38). The individual defendants move to dismiss all of the claims stated against them.[1] (Docs. # 49 and 55).

### A. Counts XIII through XXI, Plaintiffs' RICO and Felonious Tort Claims, are Due to be Dismissed

As a general rule, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, the Supreme Court has made clear that to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or

---

[1] Counts I through IV are asserted only against IC.

"naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

To survive Defendants' motions, the allegations of a complaint must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* The court has carefully considered Defendants' Motions and Plaintiff's Second Amended Complaint and concludes that Counts XIII through XXI, constitute a classic example of a shotgun pleading, which the Eleventh Circuit has "condemned repeatedly." *Muglata v. Samples*, 256 F.3d 1284 (11th Cir. 2001).

"Shotgun pleading" refers to an unfocused, scattered approach which makes it difficult (often impossible) for the court and the opposing parties to discern the nature of the claims being asserted. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (describing "quintessential 'shotgun' pleadings" complete with "rambling recitation[s]" and "factual allegations that could not possibly be material" that force the "district court [to] sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted"); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir. 2010) ("The complaint was a typical 'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading.").

Counts XIII through XXI violate all of these principles. Each count incorporates all allegations of the Second Amended Complaint and alleges that all of those allegations constitute a

violation of Plaintiffs' rights.  Moreover, these counts also clearly run afoul of *Twombly* and *Iqbal* because they are replete with legal conclusions masquerading as facts and devoid of specific factual allegations. Therefore, Counts XIII through XXI are due to be dismissed without prejudice for these reasons.

### 1. The RICO Claims Fail to State A Claim

As Defendants correctly note, many courts of appeal, as well as the Middle District of Alabama, have refused to find a valid RICO claim where the alleged enterprise consists only of a corporation and its employees. *See, e.g. Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste,* 2011 WL 2893629 *2-3 (M.D. Ala. 2011);  *Khurana v. Innovative Health Care Sys.*, 130 F.3d 143, 155 (5th Cir. 1997), *vacated on other grounds, Teel v. Khurana*, 525 U.S. 979 (1998) ("The distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants.") (internal quotation marks and citation omitted) (quoted in *ISystems v. Spark Networks, Ltd.*, 2011 WL 2342523, *4 (5th Cir. 2011)); *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) ("employees acting solely in the interest of their employer, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise."); *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A* ., 30 F.3d 339, 344 (2d Cir. 1994) (distinguished and left intact by *Kushner*, 533 U.S. at 164) ("Nevertheless, by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be

circumvented."); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 377 (6th Cir. 1993) ("Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself."). This court agrees with the well-reasoned conclusions of these decisions. Therefore, Counts XIII through XV are due to be dismissed with prejudice for this additional reason.

Moreover, it does not appear that Plaintiff Burchfield has standing to assert the RICO claims. When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing). *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). These are necessarily two separate and distinct inquiries, and the court must first address the issue of Article III standing. That inquiry presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim. *See Steel Co.*, 523 U.S. at 92–94. The "hard floor" of Constitutional standing requires an injury in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Here, the Second Amended Complaint does not state a plausible injury in fact on behalf of Plaintiff Burchfield which is sufficient to establish Article III standing to pursue these claims. Whether it states a plausible injury on behalf of Plaintiff Jenkins is, perhaps, a closer question, but the court concludes that all of these claims are due to be dismissed for the reasons discussed above.

### 2. The Felonious Tort Claims Fail to State A Claim As A Matter of Law

Plaintiffs claim that they may recover civil damages for alleged violations of criminal statutes based upon a century of Alabama precedent. However, in *Martinson v. Cagle*, 454 So.2d 1383 (Ala. 1984), the Alabama Supreme Court clarified its much earlier statement that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts." 454 So.2d at 1385 (quoting *Hardie-Tynes Mfg. Co. v. Cruse*, 189 Ala. 66, 66 So. 657, 661 (1914)). In *Martinson,* the court explained that, although an act that constitutes a crime may also serve as the basis of a civil action, civil liability does not exist automatically. Rather, civil liability exists "only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted." *Id.; see also Prill v. Marrone*, 23 So.3d 1, 11 (Ala. 2009); *Hardesty v. CPRM Corp.,* 391 F.Supp.2d 1067, 1071 (M.D. Ala. 2005). Counts which merely allege that criminal acts were committed and that the Plaintiffs were thereby injured do not state a civil cause of action. *Martinson*, 454 So.2d at 1385; *Prill*, 23 So.3d at 11; *Hardesty,* 391 F.Supp.2d at 1071. Because Counts XVI through XXI do no more than allege that the Defendants violated a criminal statute and that the Plaintiffs were damaged, these counts do not state a claim and are due to be dismissed.

### B. Burchfield's Counts V through VIII Fail to State a Claim on behalf of Burchfield

In Counts V through VIII, Burchfield asserts Retaliatory Hostile Environment and Retaliatory Discharge claims based upon both Title VII and Section 1981. In these counts, Burchfield complains of conduct directed toward Jenkins which occurred after Burchfield's employment had been terminated. Burchfield's allegations do not state valid claims.

In support of their arguments on this question, Plaintiffs rely upon *Thompson v. North American Stainless, LP*, 131 S.Ct. 863 (2011), but that reliance is misplaced. In *Thompson*, both the plaintiff and his fiancee were still employed by the defendant at the time of the unlawful action. *Thompson*, 131 S.Ct at 867. Indeed, the EEOC guidance relied upon in that case stated that such retaliation can be "challenged by both the individual who engaged in protected activity and the relative, *where both are employees*." EEOC Compliance Manual § 8–II(B)(3)(c) (1998) (emphasis added). That is not the situation presented here. At the time relevant here, Burchfield was no longer an employee. Although Jenkins may assert claims on his own behalf for conduct allegedly directed at him, Burchfield, his already-terminated uncle, may not.

Hostile environment harassment occurs when an employee's "workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions *of the victim's* employment.' " *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (emphasis added). In order to establish a hostile environment claim, the plaintiff must show that: (1) he or she is a member of a protected class; (2) *he or she was subject to unwelcome harassment*; (3) the harassment was based on his or her protected category; and, (4) the harassment was severe and pervasive enough *to affect a term, condition, or privilege of employment*. *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982) (emphasis added). Not only was Burchfield not the victim of the conduct alleged in these counts, but he was not even an employee at the time it allegedly occurred. Therefore, the terms and conditions of his employment could not have been affected. Only those incidents of which a plaintiff is aware *during his employment* can alter the terms and conditions of employment and therefore serve as the basis for a hostile environment claim.

9

*See Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995)("[S]ome of the incidents relied upon were not made known to Edwards until after her termination and, therefore, could not have contributed to her subjective view of a hostile environment.").

Similarly, in order to establish a prima facie case of retaliation under either Title VII or Section 1981, an employee must show that: (1) he engaged in a protected activity; (2) *he suffered an adverse employment action*; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). In his retaliatory discharge allegations contained in Counts VII and VIII, Burchfield does not allege that *he suffered* any adverse *employment action*. Rather he asserts that Jenkins suffered the adverse employment action. Such a claim fails at the most basic level.

For these reasons, Counts V through VIII are due to be dismissed with prejudice.

    **C.    Jenkins's Counts IX and XI Under Title VII are Due to be Dismissed**

Defendant IC moves to dismiss Jenkins's Title VII claims because he failed to satisfy administrative prerequisites. Jenkins filed his own EEOC charge, but has not received a notice of right to sue. Jenkins asserts that he is not required to satisfy administrative prerequisites on his own, but instead may rely on Burchfield's satisfaction of those prerequisites. For the reasons stated below, the court disagrees.

"Prior to filing a Title VII action ... a plaintiff first must file a charge of discrimination with the EEOC." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).[2]  However, merely filing the EEOC charge is insufficient to satisfy the administrative prerequisites to a Title VII

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

claim.  There are actually two administrative prerequisites to the filing of a civil action under Title VII that a Title VII plaintiff must satisfy: he must "(1) file timely charges of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's statutory notice of the right to sue." *Brown v. City of Cleveland*, 294 Fed.Appx. 226, 233 (6th Cir. 2008). IC has moved to dismiss Jenkins's Title VII claim because, like Burchfield initially, based upon the record before the court, Jenkins has undisputedly failed to satisfy the second part of the administrative prerequisites. Although Jenkins has filed an EEOC charge, there is no evidence in the record that the EEOC has completed its investigation and issued Jenkins a notice of right to sue.

"The purpose of this exhaustion requirement 'is that *the [EEOC]* should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983) and *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir.1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted *through the office of the EEOC*.")) (emphasis added).

Admittedly, in certain circumstances, one Plaintiff may "piggyback" on the EEOC charge and administrative filings of another.  "A plaintiff may piggyback on another plaintiff's charge provided '"(1) the relied upon charge [to which he is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff [the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory treatment *in the same time frame*."' *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449 (11th Cir. 1993)) (emphasis added).  Here, the conduct about

11

which Jenkins complains occurred during a different time period than the conduct about which Burchfield complained in his EEOC charge. Indeed, the conduct Jenkins complains about occurred *after* Burchfield's employment had already been terminated. It is also arises out of a different type of alleged mistreatment. Therefore, Jenkins may not piggyback on Burchfield's administrative filings.

Plaintiffs cite *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981) for the proposition that Jenkins need not exhaust administrative prerequisites because Burchfield's EEOC charge is properly before the court. However, *Gupta* held that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge filed *by that plaintiff.* *Gupta*, 411 F.2d at 413-14. Therefore, *Gupta* is inapposite because it contemplates the retaliation claim will grow out of the *same employee's* underlying charge.

Here, the record does not reflect that Plaintiff Jenkins has satisfied the administrative prerequisites to the Title VII claims stated in the Second Amended Complaint; therefore, those claims are due to be dismissed without prejudice.

### D.  Jenkins's Counts X and XII Under Section 1981 are Due to be Severed

Defendants IC and Welch both moved to dismiss Plaintiff Jenkins' Section 1981 claims. However, as discussed above, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" and which "permit[s] the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court has carefully considered Defendants' Motions and the Second Amended Complaint and is satisfied that Plaintiff Jenkins has satisfied applicable pleading standards to survive a motion to dismiss his Section 1981 claims.

Defendant IC also raises the issue of whether Plaintiffs' claims are properly joined. Under Federal Rule of Civil Procedure 20, a plaintiff may join claims against a defendant if the claims "aris[e] out of the same transaction, occurrences, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed.R.Civ.P. 20(a)(2). Thus, a party seeking joinder under Rule 20 must establish two conditions: 1) a right to relief arising out of the same transactions or occurrence, or series of transactions or occurrences, and 2) some questions of law or fact common to all persons seeking to be joined. *See Id.* The central purpose of Rule 20 is to promote judicial efficiency and expedite the resolution of claims, thereby eliminating unnecessary additional lawsuits. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000).

Rule 21, however, provides that "the court may at any time, on just terms, add or drop a party," and "[t]he court may also sever any claim against a party." Fed.R.Civ.P. 21. Rule 42(b) also allows for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Thus, the district court is afforded broad discretion under Rules 21 and 42(b) to sever claims, drop parties, order separate trials or make such other orders as will prevent delay or prejudice. *Anderson v. Moorer*, 372 F.2d 747, 750 n. 4 (5th Cir. 1967). "'Whether severance would facilitate ... judicial economy is among the factors a court may examine while determining whether to sever [ ] claims.'" *Formosa v. Lowe's Home Centers, Inc.*, 806 F.Supp.2d 1181, 1187 (N.D. Ala. 2011) (quoting *Tillis v. Cameron*, 2007 WL 2806770, at *5 (M.D. Ala. 2007)).

The remaining claims (and, in reality, all of the claims) of Burchfield and Jenkins do not arise out of the same transactions or occurrences, or series of transactions or occurrences. The misconduct

complained of by Jenkins occurred after Burchfield's employment had already been terminated and involved separate and distinct occurrences. Burchfield's claims have been pending before the court for over a year. Jenkins has yet to satisfy administrative prerequisites to certain of his claims. Therefore, the court will exercise its discretion under Rule 21 to sever the claims of Plaintiffs Burchfield and Jenkins.

**II.    Conclusion**

For the reasons stated above, the court concludes that:

1. Defendant Industrial Chemicals, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. # 37) is due to be granted in part and denied in part;

2. Defendant Carlos Maravilla's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. # 49) is due to be granted; and

3. Defendant William L. Welch, Jr.'s Motion to Dismiss Second Amended Complaint (Doc. # 54) is due to be granted in part and denied in part.

4. Counts I through IV will remain pending in this case.

5. Counts VI and VIII will be severed and a new civil action will be opened on behalf of Plaintiff Jenkins wherein he may assert his remaining claims against IC and Welch.

6. Counts V and VII will be dismissed without prejudice.

7. Counts IX through XXI will be dismissed with prejudice.

A separate order will be entered.

**DONE** and **ORDERED** this ____16th____ day of November, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE